**BRYAN CAVE LEIGHTON PAISNER LLP**
Martin W. Taylor, California Bar No. 149744
Kristin S. Webb, California Bar No. 258476
David J. Root, California Bar No. 307251
Wenqing Wenny Zhu, California Bar No. 358792
1920 Main Street, Suite 1000
Irvine, California 92614-7276
Telephone:  (949) 223-7000
Facsimile:  (949) 223-7100
E-Mail:      marty.taylor@bclplaw.com
             kristin.webb@bclplaw.com
             david.root@bclplaw.com
             wenny.zhu@bclplaw.com

Attorneys for Defendant NANO BANC, a California corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| GERALD J. MARCIL, an individual; GERALD J. MARCIL AND CAROL L. MARCIL AS TRUSTEES OF THE MARCIL FAMILY TRUST, DATED May 9, 1997; WOODGLEN APTS., LLC, a California limited liability company; ARROWHEAD STANTON APARTMENTS, LP, a California limited partnership; AZUL APARTMENTS LIMITED PARTNERSHIP, a California limited partnership; MONTERRA INVESTMENTS LP, a California limited partnership; TORRANCE TERRACE INVESTMENT, LP, a California limited partnership; PACIFICA GARDEN APTS., LP., a California limited partnership; HARBOR GREEN INVESTMENTS, LP, a California limited partnership; MARINE TERRACE INVESTMENT LIMITED, PARTNERSHIP, a California limited partnership; SUNSET RIDGE INVESTMENT LP, a California limited partnership; and WATERSTONE GARDEN INVESTMENTS, LP, a California limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>NANO BANC, a California corporation; MAHENDER MAKHIJANI, an | Case No. 8:26-CV-01143-JFW-JDEx<br><br>**DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR ORDER: 1) AUTHORIZING MARCIL TO DEPOSIT PAYMENTS ON THE $19MM LOAN WITH THE COURT PENDING FINAL DECISION ON THE MERITS; AND 2) ENJOINING DEFAULT REMEDIES PENDING A FINAL DECISION ON THE MERITS**<br><br>Date:  Unknown<br>Time:  Unknown<br>Location:  Unknown |

individual; CONTINUUM ANALYTICS, INC.; and DOES 1 through 20,

Defendants.

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

**TABLE OF CONTENTS**

Page

I.   Introduction ..................................................................................................... 1

II.  Relevant Facts Plaintiffs Omit or Misstate ..................................................... 3

    A.   Plaintiffs are sophisticated insiders, not vulnerable victims................... 3

    B.   Plaintiffs signed, accepted the benefits of, and amended the loan documents ............................................................................................... 4

    C.   Plaintiffs created the urgency they now invoke..................................... 4

    D.   The Honarkar Award is not a finding against Nano in favor of Plaintiffs ............................................................................................... 5

    E.   The Indemnity Agreement expressly covers the very claims Honarkar asserted.................................................................................. 5

    F.   Marcil is no stranger to litigation involving these same actors .............. 5

III. Legal Standard................................................................................................. 6

    A.   Standard for *Ex Parte* Relief................................................................ 6

    B.   Standard For a Motion for Preliminary Injunction ................................ 7

IV.  The Application Must Be Denied...................................................................... 9

    A.   The Application is Procedurally Defective............................................. 9

        1.   The Application does not satisfy, let alone mention, *Mission Power* ................................................................................... 9

        2.   The Application also violates Local Rule 7-19 ......................... 10

    B.   The Court Cannot Take Judicial Notice of the Factual Findings in the Honarkar Award........................................................................ 10

        1.   Judicial Notice extends to the existence of the award, not the truth of its findings............................................................. 10

        2.   Plaintiffs Misuse the Award as Substantive Proof ..................... 11

        3.   Without the award, Plaintiffs offer no admissible evidence of fraud................................................................................... 12

    C.   Plaintiffs have not met their burden under *Winter*, much less the heightened burden for a mandatory injunction ................................... 13

        1.   Plaintiffs seek a mandatory injunction ..................................... 13

        2.   Plaintiffs are unlikely to succeed on the merits......................... 14

DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

a.   Plaintiffs' fraud theory rests on inadmissible findings and is barred by releases given by Marcil..........14

b.   The Indemnity Agreement is enforceable, supported by consideration, and covers Honarkar's claims..............16

c.   Unconscionability fails on this record.............................18

d.   The elder abuse claim is opportunistic and fails as a matter of law.......................................................................19

e.   Collateral estoppel does not assist Plaintiffs.....................19

3.   Plaintiffs cannot show irreparable harm.....................................20

4.   The balance of equities tips in Nano's favor..............................21

5.   The public interest disfavors the requested relief.......................21

D.   Federal Rule of Civil Procedure 67 Does not authorize the relief Plaintiffs seek................................................................................22

E.   Federal Rule of Civil Procedure 65 requires a bond............................23

V.   Conclusion................................................................................23

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ........................................................................... 8

*Alstrom Caribe, Inc. v. George P. Reintjes Co., Inc.*,
484 F.3d 106 (1st Cir. 2007) ............................................................................ 22

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ....................................................................................... 18

*Brady v. Basic Research, LLC*,
312 FRD 304 (E.D.N.Y. 2016) ......................................................................... 22

*California Rifle & Pistol Association, Incorporated v. Los Angeles
Cnty. Sheriff's Department*,
745 F.Supp.3d 1037 (C.D. Cal. 2024) .............................................................. 13

*Caribbean Marine Servs. Co. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988) ...................................................................... 12, 20

*DKN Holdings LLC v. Faerber*,
61 Cal. 4th 813 (2015) ..................................................................................... 19

*Doe v. Snyder*,
28 F.4th 103 (9th Cir. 2022) ........................................................................ 8, 13

*Facebook Inc. v. Pac. Nw. Software, Inc.*,
640 F.3d 1034 (9th Cir. 2011) .......................................................................... 15

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) ............................................................................ 14

*Hilliard v. Harbour*,
12 Cal. App. 5th 1006 (2017) ........................................................................... 19

*Johnson v. Comm'n on Presidential Debates*,
2014 WL 12597805 (C.D. Cal. Jan. 6, 2014) ..................................................... 1

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

*Kashani v. Adams*,
2009 WL 1068862 (S.D. Cal. Apr. 21, 2009) ...................................................... 6

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ............................................................................. 10

*Langer v. McHale*,
2014 WL 4922351 (S.D. Cal. Aug. 20, 2014) .................................................... 6

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ....................................................................... 10, 11

*Mission Power Engineering Co. v. Continental Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995) .............................................................*passim*

*Munaf v. Geren*,
553 U.S. 674 (2008) ........................................................................................... 7

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979) .......................................................................................... 19

*Parks v. Lake Oswego School District*,
785 F. Supp.3d 1247 (D. Or. 2024) ................................................................... 13

*Petro-Ventures Inc. v. Takessian*,
967 F.2d 1337 (9th Cir. 1992) ........................................................................... 15

*Prince v. Pacific Gas & Electric Co.*,
45 Cal. 4th 1151 (2009) ............................................................................... 16, 17

*Raedeke v. Gibraltar Sav. & Loan Assn.*,
10 Cal. 3d 665 (1974) ....................................................................................... 16

*Rossmoor Sanitation, Inc. v. Pylon, Inc.*
(1975) 13 Cal.3d 622 ........................................................................................ 17

*San Diego Hospice v. County of San Diego*,
31 Cal.App.4th 1048 (1995) .............................................................................. 15

*Sanchez v. Valencia Holding Co., LLC*,
61 Cal. 4th 899 (2015) ...................................................................................... 18

*Short v. Brown*,
893 F.3d 671 (9th Cir. 2018) ............................................................................... 8

iv
DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

*Smoketree-Lake Murray, Ltd. v. Mills Concrete Constr. Co.*,
   234 Cal. App. 3d 1724 (1991) ................................................................................18

*Stanley v. University of Southern California*,
   13 F.3d 1313 (9th Cir. 1994) ....................................................................................8

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*,
   240 F.3d 832 (9th Cir. 2001) ....................................................................................7

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ..........................................................................................12, 19

*Williams v. Lobel Financial Corporation*,
   673 F.Supp.3d 1101 (C.D. Cal. 2023)....................................................................19

*Winter v. Natural Resources Defense Council, Inc.*,
   555 U.S. 7 (2008) .........................................................................................*passim*

*Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003),
   *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th
   Cir. 2014)................................................................................................................11

**Statutes**

12 U.S.C. § 1821...............................................................................................................20

28 U.S.C. § 636 (b)(1)(A).................................................................................................. 3

Cal. Civ. Code § 1605.......................................................................................................16

Cal. Civ. Code § 1642.......................................................................................................16

Cal. Civ. Code § 1691.......................................................................................................16

Cal. Civ. Code § 1693.......................................................................................................16

Cal. Civ. Code § 2773.......................................................................................................17

Cal. Welf. & Inst. Code § 15610.30(a).............................................................................19

Civil Code § 1542 ..................................................................................................... 1, 4, 15

**Rules**

Fed. R. Civ. P. 65................................................................................................................3, 7

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

v

DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

Fed. R. Civ. P. 65(b) ........................................................................................... 12

Fed. R. Civ. P. 65(b)(1)(A) ................................................................................. 14

Fed. R. Civ. P. 65(c) ........................................................................................... 22

Fed. R. Civ. P. 67 ............................................................................................ 3, 22

Fed. R. Civ. P. 67(a) ........................................................................................... 22

Fed. R. Evid. 602 ................................................................................................ 20

Federal Rule of Evidence 201 ............................................................................. 10

Local Rule 7-19 ....................................................................................... 2, 10, 23

Rule 12 .................................................................................................................. 1

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

## I.  INTRODUCTION

Plaintiffs ask the Court, on twenty-four hours' notice, to rewrite commercial loan agreements, strip Defendant Nano Banc[1] ("Nano") of its bargained-for default remedies, void perfected security interests, and divert millions of dollars in loan payments into the Court registry.  They demand all of this on a self-serving declaration, a confirmed arbitration award to which they were not parties, and not a single page of admissible evidence connecting Nano to wrongdoing against them.  Plaintiffs' *ex parte* application fails at every threshold for many reasons.

*First*,  Plaintiff Gerald Marcil, both individually, as trustee of the Marcil Family Trust dated May 9, 1997, and on behalf of Plaintiff Pacifica Garden Apts., LP, released the claims pleaded in this action.  On September 12, 2025, Marcil signed an amendment to the $19MM Loan.  Four days later, he signed an amendment to the $8.5MM Loan.  Each amendment, at Section 7, contains a comprehensive release of Nano covering all claims arising out of or relating to the loan documents and the lending relationship – and each includes an express waiver of Civil Code § 1542.  Marcil signed on behalf of any "officers, . . . owners, shareholders, partners, joint venturers . . . [and] all affiliates related thereto . . . ."  He signed with full knowledge of the Honarkar Award, which was issued nearly four months earlier.  He even signed after he had learned of the Honarkar arbitration.  (Declaration of Hak Stepanyan, Ex. A; Declaration of Gerald Marcil ("Marcil Decl."), Ex. 2.)  The releases have not been rescinded.  He has retained every benefit from the amendment of these loan documents.  He cannot now press

---

[1]    Nano appears solely for the limited purpose of opposing Plaintiffs' *ex parte* application and does not waive, and expressly preserves, any defenses, including lack of personal jurisdiction, insufficient service of process, and all defenses under Rule 12. *See, e.g.*, *Johnson v. Comm'n on Presidential Debates*, 2014 WL 12597805, at *4 (C.D. Cal. Jan. 6, 2014) (jurisdiction not waived when defendant filed a response to a TRO application, specifically noting that it reserved the right to contest personal jurisdiction, and then timely raised the personal jurisdiction issue in its first motion or responsive pleading).

DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

the very claims he twice released.  The releases alone destroy Plaintiffs' likelihood of success on the merits and require summary denial of the *ex parte* application.

*Second*, even setting the releases aside, Plaintiffs' application procedurally fails because it disregards Local Rule 7-19 and ignores the controlling criteria for *ex parte* relief in this District set out in *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995).  Plaintiffs neither cite *Mission Power* nor explain why noticed-motion procedures will not suffice.  They created any urgency themselves.  They stopped paying their loans on May 1, 2026 – well after learning of the Honarkar arbitration and that Marcil agreed to indemnify Nano for any losses connected to that arbitration.  (*See* Marcil Decl. Exs. 1-3.)  They then decided to file a 92-page Complaint.  They then sat on their claims another week before racing into court.  Self-inflicted urgency is no urgency at all.

*Third*, the application's substantive theory rests almost entirely on a single document:  the May 23, 2025, Partial Final Award issued in JAMS Case No. 5220003126 (the "Honarkar Award"), confirmed by judgment of the Orange County Superior Court on December 5, 2025.  But the Honarkar Award resolved claims by *Mohammad Honarkar* against Nano.  Plaintiffs were not parties to that proceeding.  The Court can judicially notice that the Award exists.  But the Court cannot accept the Award's contested factual findings as proof of anything in this case.  Strip the Honarkar Award from the picture, and Plaintiffs' merits showing collapses into the conclusory paragraphs of a single self-serving declaration.

*Fourth*, what remains is the declaration of Gerald J. Marcil – a wealthy, sophisticated real estate investor of more than four decades' experience who owns interests in entities holding hundreds of millions of dollars in California multifamily real estate, who invested approximately $6 million in Nano's equity, who admits he stopped paying his loans, and who twice signed releases of the very claims he now presses.  That declaration cannot carry the weight of the four *Winter* factors to

2

DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

obtain a preliminary injunction, much less the heightened burden that governs mandatory injunctions requiring Nano to terminate perfected UCC filings.

*Fifth*, the relief Plaintiffs request would inflict serious harm on Nano while affording them no benefit Federal Rule of Civil Procedure 65 was designed to provide. Plaintiffs propose to deposit some future payments into the Court registry while the Court strips Nano of every meaningful collection right under documents Plaintiffs signed and ratified. They offer no bond. They ignore their existing arrearage. They invoke Federal Rule of Civil Procedure 67 as if it conferred substantive relief. It does not.

For these reasons, and as detailed below, the Court should deny the application in full.[2]

## II.   RELEVANT FACTS PLAINTIFFS OMIT OR MISSTATE

### A.   Plaintiffs are sophisticated insiders, not vulnerable victims

Marcil has worked in the multi-family residential real estate business since age 23 and is an "experienced real estate investor." (Application at 4:5-7.) He owns or controls Plaintiff Woodglen APTS., LLC, an entity that itself controls "dozens of entities that own real estate." (Application at 1:11-17.) The Marcil

---

[2]   Nano notes that Judge McCormick was assigned the above-entitled matter on May 15, 2026. (ECF No. 5.) Nano was not served the summons and Complaint until May 18, 2026. Because Nano has not consented for the action to proceed before Judge McCormick for all purposes, Nano respectfully contends that the Court does not have jurisdiction over Plaintiffs' request for a preliminary injunction. *See* 28 U.S.C. § 636 (b)(1)(A) ("a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, **except a motion for injunctive relief**, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.") (emphasis added); *see also* Direct Assignment of Civil Cases to Magistrate Judges | Central District of California | United States District Court ("The following civil cases **are not eligible for assignment to a Magistrate Judge under the opt-out consent program:  cases filed with a request for a temporary restraining order or preliminary injunction**, death penalty habeas corpus petitions, bankruptcy appeals, bankruptcy withdrawal of reference cases, or cases filed with a notice of related cases.") (emphasis added) (last checked on May 19, 2026).

DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

Family Trust holds substantial commercial real estate interests through limited partnerships across Southern California.  (*See, e.g.*, Compl., ¶¶ 23–33.)  Marcil also invested approximately $6 million in Nano's equity – meaning he is a shareholder of the very bank he now accuses of defrauding him.  (Marcil Decl. ¶ 6.)  He has been a Continuum investor for more than a decade.  (Marcil Decl. ¶¶ 5–7.)  He is hardly the unwitting elder Plaintiffs paint.

> **B.**      **Plaintiffs signed, accepted the benefits of, and amended the loan documents**

Marcil signed the $19MM Loan in December 2024 and the $8.5MM Loan documents in March 2019.  (Marcil Decl. ¶¶ 9–11, 16.)

On September 12, 2025, Marcil signed an amendment to the $19MM Loan setting the monthly payment at $100,498, which he then paid for months.  (Marcil Decl. ¶ 15.)  Four days later, Marcil signed an amendment to the $8.5MM Loan, after which he paid $41,832 per month "until filing the Complaint." (Marcil Decl. ¶¶ 15-19.)  Those two amendments – each negotiated and executed long after Plaintiffs claim to have discovered the alleged fraudulent scheme – ratified the loan obligations Plaintiffs now seek to escape.

In relevant part, Section 7 of the amendment to the $19MM Loan and the amendment to the $8.5MM Loan contains a comprehensive release of Nano from all claims, known and unknown, arising out of or relating to the loan documents and the lending relationship.  The releases include express waivers of California Civil Code § 1542.  Marcil executed these documents.  (*See, e.g.*, Marcil Decl., Ex. 5, § 7.)

> **C.**      **Plaintiffs created the urgency they now invoke**

Nano served its Notice of Default and Acceleration of Loan on May 1, 2026.  Marcil immediately stopped paying.  (Application at 2:9-15 ["Marcil had ceased making the Loan Payments after Nano wrongfully issued its notice of default on May 1, 2026 . . . ."].)  He filed his 92-page Complaint on May 11, 2026.  He then

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

4

waited another week before filing this ex parte.  By the date this opposition is filed, Plaintiffs will have been in monetary default, independent of any indemnity-based theory, for over two weeks.

### D.     The Honarkar Award is not a finding against Nano in favor of Plaintiffs

The Honarkar Award resolved claims brought by third-party Honarkar and his entity 4G Wireless, Inc. against Nano and others.  (Honarkar Award at 1–4.)  Plaintiffs were not parties. They did not participate.  The Award resolved a real-estate joint venture dispute centered on the so-called "MOM JV Entities" (Honarkar Award at 3) – entities to which Plaintiffs were not parties. Nothing in the Award purports to adjudicate any claim by Marcil against Nano.  Nothing in the Award mentions the $19MM Loan, the $8.5MM Loan, or the Indemnity Agreement.

### E.     The Indemnity Agreement expressly covers the very claims Honarkar asserted

The December 16, 2024, Indemnity Agreement obligates Marcil to indemnify Nano against any claim arising from, among other things, "the Borrower's failure to obtain consent from Mohammed Honarkar for transfers, pledges, or loan transactions."  (Marcil Decl., Ex. 1; Application at 8:12-19.)  Honarkar's claims in the JAMS arbitration concerned exactly that: alleged failures to obtain his consent for the original loan transaction and pledges of his interests. The Indemnity Agreement was drafted to allocate that very risk.  Plaintiffs cannot now pretend the Indemnity Agreement bears no relation to the claims it was designed to address.

### F.     Marcil is no stranger to litigation involving these same actors

Marcil's portrayal of himself as an unwitting elder cannot be squared with his recent litigation history.  In *Security National Guaranty, Inc. v. Mahender Makhijani, et al.*, Orange County Superior Court Case No. 30-2023-01347034, Marcil was named as a defendant on fiduciary-duty and related claims, shared

DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

counsel with Mahender Makhijani, and settled shortly after trial.  (Declaration of David Root, Ex. A at 1:1-2:7 & n.1.)  On December 18, 2025 – and three months after Marcil signed the September 2025 releases at issue here – the trial court entered judgment confirming a jury verdict against Mahender Makhijani for $9.25 million in compensatory damages and $7 million in punitive damages and concurrently entering judgment in favor of Nano on derivative claims. (*Id.* at 2:8-6:8.)

Following an eight week jury trial in which Marcil testified, a jury returned a verdict against Marcil personally that he had (1) breached his fiduciary duty to plaintiff SNG Evariste and SNG; (2) he conspired with Mr. Makhijani, among others (but not Nano) to breach his fiduciary duty; and that he did this with malice, oppression and/or fraud warranting punitive damages. The jury returned a verdict against Marcil personally of $9.25 million jointly and severally; and $15 million in punitive damages.  (Declaration of Hak Stepanyan, Exs. B-C.)

## III. LEGAL STANDARD

### A. Standard for *Ex Parte* Relief

Omitted from Plaintiffs' application is any reference to the relevant standard to obtain *ex parte* relief.  *Ex parte* proceedings are exclusively reserved for emergency circumstances.  *Langer v. McHale*, 2014 WL 4922351, at *2 (S.D. Cal. Aug. 20, 2014).  Because *ex parte* applications seek to bypass regularly noticed motion procedures, the movant must establish a basis for giving the application priority.  *Kashani v. Adams*, 2009 WL 1068862, at *2 (S.D. Cal. Apr. 21, 2009). Accordingly, *ex parte* applications will only be granted upon an adequate showing of the following:  "First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures.  Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis

DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Continental Cas. Co.,* 883 F. Supp. 488, 492 (C.D. Cal. 1995).

"To show irreparable prejudice, it will usually be necessary to refer to the merits of the accompanying proposed motion, because if it is meritless, failure to hear it cannot be prejudicial." *Id.* "A sliding scale is used to measure the threat of prejudice. If the threatened prejudice would not be severe, then it must be apparent that the underlying motion has a high likelihood of success on the merits," but "[i]f drastic harm is threatened, then it is sufficient to show that there are close issues that justify the court's review before the party suffers the harm." *Id.*

"To show that the moving party is without fault, or guilty only of excusable neglect, requires more than a showing that the other party is the sole wrongdoer." *Id.* at 493. "It is the creation of the crisis—the necessity for bypassing regular motion procedures—that requires explanation. For example, merely showing that trial is fast approaching and that the opposing party still has not answered crucial interrogatories is insufficient to justify ex parte relief." *Id.* "The moving party must also show that it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period." *Id.*

### B.    Standard For a Motion for Preliminary Injunction

The standards for issuing a temporary restraining order and a preliminary injunction are identical. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) ("Because our analysis is substantially identical for the injunction and the TRO, we do not address the TRO separately."). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citations omitted). "It may only be granted upon a clear showing that the plaintiff is entitled

DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).

The moving party bears the burden of demonstrating (1) its likelihood of success on the merits of its claims; (2) its likelihood of irreparable injury if relief is not granted; (3) that the balance of hardships tips in its favor; and (4) that injunctive relief is in the advancement of the public interest. *Winter*, 555 U.S. at 20; Fed. R. Civ. P. 65.

The Ninth Circuit employs a slight variant of the *Winter* test called the "serious questions" test, which provides that "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Under the "serious questions" standard, courts may weigh the elements "on a sliding scale, such that where there are only 'serious questions going to the merits' – that is, less than a 'likelihood of success' on the merits – a preliminary injunction may still issue so long as 'the balance of hardships tips sharply in the plaintiff's favor' and the other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (citations omitted). Nonetheless, the plaintiff must "make a showing on all four prongs." *All. for the Wild Rockies*, 632 F.3d at 1135.

A request for a mandatory injunction is subject to a "higher degree of scrutiny because such relief is particularly disfavored." *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994). They should not be issued unless "extreme or very serious damage would result that was not compensable in damages, and the merits of the case were not doubtful." *Doe v. Snyder*, 28 F.4th 103, 108 (9th Cir. 2022) (internal citations omitted).

DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

## IV. THE APPLICATION MUST BE DENIED

### A. The Application is Procedurally Defective

#### 1. The Application does not satisfy, let alone mention, *Mission Power*

Plaintiffs neither cite *Mission Power* nor address either irreparable prejudice or that they are without fault in creating the crisis that requires ex parte relief. *Mission Power Eng'g,* 883 F. Supp. at 492. For this reason alone, the application should be denied.

*Irreparable prejudice from noticed procedures.* Plaintiffs identify nothing that will be irreparably lost in the 28 days it would take to hear a noticed preliminary-injunction motion. The May 1 UCC-1 filings are static – that is, they do not foreclose anything, and they cannot ripen into foreclosure during a noticed motion's pendency. (*Cf.* App. at 19:1-19.) Nano has not noticed a non-judicial foreclosure sale. (*Id.*) Nano has not commenced a judicial foreclosure action. Nano has not exercised governance substitution rights. (*Cf. id.* at 19:20-20:5.) Nano has not seized any account. (*Cf. id.* at 20:6-18.) The supposed imminent harm exists only at the level of generalized fear in Marcil's declaration. That is not the *Mission Power* standard.

*No fault in creating the crisis*. Even if irreparable prejudice existed, Plaintiffs manufactured it. They stopped paying the relevant loans on May 1. They drafted a 92-page Complaint that they filed on May 11. They then waited until May 18 to seek emergency relief. A party who could draft a 92-page complaint in ten days, followed by preparing and filing an ex parte application a week later, could have filed a noticed motion at any point in that window. Plaintiffs' delay is fatal. *See Mission Power*, 883 F. Supp. at 493 ("The present motion to shorten time to hear plaintiff's motion for return of papers inadvertently delivered to defendant does

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

9

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

not establish that plaintiff will be irreparably prejudiced if its motion is heard on the regular motion calendar.").

Plaintiffs' framing also concedes the point. They tell the Court they "ceased making the Loan Payments after Nano wrongfully issued its notice of default on May 1, 2026" because they "would likely be unable to recover them if Nano is placed into receivership." (Application at 2:9-15.) That admission destroys the *Mission Power* second prong. Plaintiffs unilaterally elected to default. They cannot now invoke their own default to justify ex parte relief.

### 2.     The Application also violates Local Rule 7-19

Local Rule 7-19 imposes a duty on the applicant "(a) to make reasonable, good faith efforts orally to advise counsel for all other parties, if known, of the date and substance of the proposed ex parte application and (b) to advise the Court in writing and under oath of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application." The application fails to comply. It identifies no date, time, or judge before whom Plaintiffs propose the application be heard or decided; instead reciting only the date Plaintiffs themselves filed. These omissions are not technical. Local Rule 7-19 seeks to ensure that *ex parte* applications are reserved for genuine emergencies and that opposing parties get a meaningful opportunity to respond. The Court should deny the application on that ground alone.

### B.     The Court Cannot Take Judicial Notice of the Factual Findings in the Honarkar Award

#### 1.     Judicial Notice extends to the existence of the award, not the truth of its findings

Federal Rule of Evidence 201 allows judicial notice only of facts "not subject to reasonable dispute." The Ninth Circuit has held that courts may take judicial notice of the existence and contents of court filings – that is, the fact that a

10

document was filed and the fact that it says what it says – but may not take judicial notice of the truth of contested factual matters recited within them. *See, e.g.*, *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001) (stating that a court may take judicial notice "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity" and "a court may not take judicial notice of a fact that is subject to reasonable dispute"); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("a court cannot take judicial notice of disputed facts contained in such public records"); *Wyatt v. Terhune*, 315 F.3d 1108, 1114 & n.5 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (judicial notice of administrative findings limited to existence, not truth).

These limits apply with full force to confirmed arbitration awards. A confirmed award becomes a judgment, but it remains a record of disputed findings made between particular parties. Plaintiffs have cited no authority (because none exists) supporting that confirmation transforms those findings into facts immune from reasonable dispute as to non-parties.

### 2. Plaintiffs Misuse the Award as Substantive Proof

The application repeatedly treats the Honarkar Award as if it were a final adjudication of Nano's liability for fraud as against Marcil. It is nothing of the kind. The Honarkar Award resolved a real-estate joint-venture dispute among Honarkar, Continuum, the MOM Parties, and Nano regarding properties and entities to which Plaintiffs are strangers. (Award at 3.) The Award expressly identifies the agreements at issue as the MOM Operating Agreements, the Asset Contribution Agreement, and the related JV agreements. (Award at 3 n.3.) None of those agreements is at issue here. The $19MM Loan, the $8.5MM Loan, and the Indemnity Agreement appear nowhere in the Award.

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

11

Plaintiffs nonetheless invite the Court to read the Award as having decided Nano's culpability for fraud "in connection with the underlying $20 million Original Loan that was refinanced by the $19MM Loan." (Application at 1.)  But that sleight of hand fails for three reasons.

First, the Court cannot accept the Award's findings as substantively true for the reasons above.  And even if the Award says what Plaintiffs claim it says, the Court cannot use it as proof of Nano's fraud against Marcil.  *See Lee*, 250 F.3d at 690.

Second, the Award does not purport to find that Nano committed fraud against Marcil or any plaintiff in this case.  The Award's findings – including the limited findings of conspiracy and aiding-and-abetting liability – were rendered with respect to Honarkar's claims under Honarkar's contracts in Honarkar's transaction. Nothing in the Award speaks to Marcil's claims, Marcil's contracts, or Marcil's transactions.

Third, the collateral-estoppel doctrine does not bridge that gap.  Marcil was not a party.  Marcil was not in privity with any party.  He had no full and fair opportunity to litigate.  *See Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008) (nonparty preclusion is the exception, not the rule).  Plaintiffs cannot use the Award offensively against Nano while simultaneously disclaiming any participation in the proceeding.

**3.      Without the award, Plaintiffs offer no admissible evidence of fraud**

Once the Court sets the Award aside as inadmissible for the truth of its findings, what remains is the Marcil Declaration.  But that declaration is conclusory, internally inconsistent, and contradicted by Plaintiffs' own concessions.  It cannot support the extraordinary relief Plaintiffs request.

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

12

A preliminary injunction must rest on "specific facts" shown by "affidavit or verified complaint" demonstrating immediate and irreparable injury. Fed. R. Civ. P. 65(b). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (internal citation omitted) (emphasis in original). Plaintiffs' evidentiary record falls below even that floor.

**C.** **Plaintiffs have not met their burden under *Winter*, much less the heightened burden for a mandatory injunction**

**1.** **Plaintiffs seek a mandatory injunction**

A mandatory injunction is a request for "affirmative action" on the part of the defendant. *Doe v. Snyder*, 28 F.4th 103, 108 (9th Cir. 2022). "When, as here, the movant is not seeking to maintain the status quo pending a determination of the action on the merits. . . but instead is seeking an order requiring the nonmoving party to take action, the movant is seeking a mandatory injunction." *California Rifle & Pistol Association, Incorporated v. Los Angeles Cnty. Sheriff's Department*, 745 F.Supp.3d 1037, 1048 (C.D. Cal. 2024).

For example, in *Parks v. Lake Oswego School District*, a public school employee was held to seek a mandatory injunction when he requested the school district to reinstate him as the track-and-field coach for the 2024-2025 school year even though the school year had already begun with the school having hired new coaches. 785 F. Supp.3d 1247, 1260 (D. Or. 2024). The court reasoned the request was a mandatory injunction because at "the time when [the Plaintiff] filed his motion for preliminary injunction on October 7, 2024 . . . [and] Defendants were not threatening to do something in the future that Parks wanted the Court to prevent

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

13

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

from occurring.  The School Defendants had already taken their action.  [Plaintiff] now is asking for an order directing the School Defendants to reverse their action and 'restore' [him] to his former employment, to which he claims he is legally entitled." *Id.*

Plaintiffs, like the plaintiff in *Parks*, do not seek to preserve the status quo through the present application.  Plaintiffs seek a mandatory injunction requiring Nano to terminate perfected UCC filings.  (Application at 2:16-25.)  To comply with the requested injunction, they must show that the facts and the law "clearly favor" them.  They cannot and therefore the entire application should be denied.  *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) ("Garcia's burden here is doubly demanding: Because Garcia seeks a mandatory injunction, she must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed. . . . The 'district court should deny such relief 'unless the facts and law clearly favor the moving party.'  In plain terms, mandatory injunctions should not issue in 'doubtful cases.'") (internal citations omitted).

### 2.    Plaintiffs are unlikely to succeed on the merits

Plaintiffs assert five separate bases for substantial success:  (1) fraud in the inducement; (2) the Indemnity Agreement is purportedly unenforceable; (3) the Loan Documents are somehow unconscionable; (4) Marcil's claim for financial elder abuse somehow supports injunctive relief; and (5) the collateral estoppel effect of the Honarkar Award.  (Application at 11:15-18:27.)  Each argument fails and is addressed in turn.

### a.    Plaintiffs' fraud theory rests on inadmissible findings and is barred by releases given by Marcil.

Plaintiffs' likelihood-of-success showing depends entirely on the Honarkar Award.  (Application at 12:7-14, 12:25-13:2.)  Once that prop falls for the reasons in Section IV.B, above, their fraud theory fails.  Plaintiffs offer no independent

14

evidence – no document, no witness, no contemporaneous communication – establishing that Nano made any material misrepresentation to Marcil at the time he executed the $19MM Loan, the $8.5MM Loan, or the Indemnity Agreement. Marcil's allegations of "concealment" are recitals, not evidence, and they cannot survive the Court's evidentiary scrutiny on a motion that requires "specific facts." Fed. R. Civ. P. 65(b)(1)(A).

Even if Plaintiffs could establish their fraud theory, Marcil released those claims nine months before filing suit.  Section 7 of the September 12, 2025, amendment to the $19MM Loan, as well as Section 7 of the September 16, 2025, amendment to the $8.5MM Loan, contain comprehensive releases of Nano and a knowing, voluntary, and express waiver of Civil Code § 1542.  (*See, e.g.*, Marcil Decl., Ex. 5, § 7.)  The releases extend to all claims, known and unknown, suspected and unsuspected, that Marcil may have against Nano, including those arising out of or relating to the Loan Documents and the parties' lending relationship.  It is black letter law that a comprehensive release bars all subsequent claims arising from or relating to the settled litigation.  *See, e.g.*, *Facebook Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1040 (9th Cir. 2011) ("An agreement meant to end a dispute between sophisticated parties cannot reasonably be interpreted as leaving open the door to litigation about the settlement negotiation process."); *Petro-Ventures Inc. v. Takessian*, 967 F.2d 1337, 1342 (9th Cir. 1992) (holding release of known and unknown claims was valid and extinguished federal claims); *San Diego Hospice v. County of San Diego*, 31 Cal.App.4th 1048, 1053 (1995) ("a general release can be completely enforceable and act as a complete bar to all claims (known or unknown at the time of the release) despite protestations by one of the parties that he did not intend to release certain types of claims.").

The legal consequences are stark.  Marcil released *every* claim arising out of the lending relationship, including fraud-in-the-inducement, fraud-by-concealment,

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

breach of implied covenant, financial elder abuse, rescission, declaratory relief, conspiracy, constructive fraud, negligent misrepresentation, RICO, and UCL claims pleaded in the Complaint.  Marcil released those claims with knowledge of the Honarkar arbitration.  A general release executed with knowledge of the alleged wrong, coupled with an express § 1542 waiver, bars the very claims Plaintiffs now press.

In addition, Plaintiffs have not rescinded either the September 12, 2025, amendment to the $19MM Loan or September 16, 2025, amendment to the $8.5MM Loan.  To avoid the release, the party seeking rescission must promptly serve notice of rescission and restore the consideration received.  *See, e.g.*, Cal. Civ. Code §§ 1691, 1693.  Marcil did neither.  He retained every benefit of the September 12 and September 16, 2025, amendments – e.g., the reduced pay rate, modified payment structure, and continued forbearance from acceleration – through Nano's May 1, 2026, Notice of Default.  Plaintiffs cannot retain the bargain but disclaim the release.

<p style="text-align:center"><b>b.      <u>The Indemnity Agreement is enforceable, supported by consideration, and covers Honarkar's claims.</u></b></p>

The Indemnity Agreement is straightforward.  It obligates Marcil to indemnify Nano for claims arising from defects in the borrower's authority to execute the loan documents and from the borrower's failure to obtain consent from Honarkar.  (Marcil Decl., Ex. 1.)  Those are the very claims Honarkar pursued in the JAMS arbitration.  The Agreement was drafted to allocate exactly that risk.  Plaintiffs' arguments to the contrary fail.

***Consideration.***  Plaintiffs claim "past consideration" supports nothing. (Application at 13.)  But the Indemnity Agreement recites consideration that includes Nano's agreement to make the $19MM Loan, an agreement formalized in the loan documents executed contemporaneously.  The fact that Marcil signed the

<p style="text-align:center">16</p>

<div style="margin">BRYAN CAVE LEIGHTON PAISNER LLP<br>1920 MAIN STREET, SUITE 1000<br>IRVINE, CA 92614-7276</div>

Indemnity Agreement seven days after the underlying loan does not negate consideration; it was part of the same overarching transaction, and Plaintiffs' own characterization of the loan and Indemnity Agreement as a package (Marcil Decl. ¶ 20-25) precludes them from severing them now.  *See* Cal. Civ. Code §§ 1605, 1642; *Raedeke v. Gibraltar Sav. & Loan Assn.*, 10 Cal. 3d 665, 673-74 (1974) (consideration must be evaluated in light of the overall bargained-for-exchange).

*Active-fraud rule.*  Plaintiffs invoke *Prince v. Pacific Gas & Electric Co.*, 45 Cal. 4th 1151 (2009), and the rule that general indemnity provisions do not cover an indemnitee's active negligence absent express language.  (Application at 14–15.)  But *Prince* did not involve the interpretation of an express indemnity agreement; rather, it concerned a claim for implied contractual indemnity in the absence of applicable contractual provisions.

Moreover, *Prince* arose in the context of derivative indemnity for liability to an injured third party, where two parties were alleged to share responsibility for the same tort harm and the issue was how that liability should be apportioned between them.  *Prince*, 45 Cal. 4th at 1159.  The Indemnity Agreement here is of an entirely different character.  It does not allocate responsibility for third-party tort liability or shared wrongdoing but instead assigns contractual risk as between the parties arising from defects in the borrower's authority to enter the loan, to pledge collateral, and to comply with consent obligations to Honarkar.  Those obligations are independent of any third-party injury and fall outside the indemnity principles addressed in *Prince*.

Nor does *Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622 aid Plaintiffs.  Like *Prince*, *Rossmoor* concerned the allocation of liability for tort claims—there, in the construction context between parties alleged to have caused injury to a third party.

In any event, the law that bars indemnification of willful wrongs (Cal. Civ. Code § 2773) does not apply because the Indemnity Agreement does not purport to

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA  92614-7276

17

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

indemnify Nano against affirmative willful misconduct directed at Marcil. It allocates risk of consent-related claims by a third party (i.e., Honarkar). Whether those claims sound in tort against Nano is a matter for a noticed motion to test on a developed record – not for emergency relief.

***Prospective wording.*** Plaintiffs argue the "may be incurred" language renders the Indemnity Agreement prospective only and incapable of reaching pre-existing claims. (Application at 15-16.) Plaintiffs misread the text. Indemnity for claims "that may be incurred" plainly extends to indemnity obligations that become payable in the future, whether or not the underlying conduct or claim predates the indemnity. California courts have recognized that indemnity agreements may reach pre-existing exposures so long as the indemnity obligation itself is prospective. *See Smoketree-Lake Murray, Ltd. v. Mills Concrete Constr. Co.*, 234 Cal. App. 3d 1724, 1737 (1991). A contrary rule would render commercial indemnity drafting nearly impossible.

### c.    Unconscionability fails on this record.

Plaintiffs invoke unconscionability. (Application at 16–17.) Unconscionability requires both procedural and substantive elements. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Neither is satisfied here.

Procedurally, Marcil is a forty-year real estate veteran, a Nano shareholder, a Continuum investor, and the owner of a portfolio worth hundreds of millions of dollars. He was not surprised. He was sophisticated enough to make up drafts and submit comments to the Indemnity Agreement. (*See* Marcil Decl., Ex. 2 ["we have accepted your comment removing reference to the Arbitration"].) That admission confirms that Marcil's side participated in drafting the very provision Plaintiffs now claim was unilaterally imposed. There is no oppression here.

Substantively, the Indemnity Agreement allocated risk Marcil understood.

18

The loans funded a portfolio Marcil benefited from.  Whatever the merits of Plaintiffs' indemnity arguments, the Indemnity Agreement is not "shock-the-conscience" one-sided.  *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015).

### d. The elder abuse claim is opportunistic and fails as a matter of law.

The Elder Abuse and Dependent Adult Civil Protection Act protects vulnerable seniors from financial exploitation.  It does not transform every commercial dispute involving a wealthy 65-year-old into elder abuse.  The statute requires that the defendant take, secrete, appropriate, obtain, or retain the elder's property "for a wrongful use or with intent to defraud."  Cal. Welf. & Inst. Code § 15610.30(a).  Plaintiffs offer no evidence Nano did either.  Marcil is a sophisticated insider – a bank shareholder, a portfolio operator, and an experienced borrower. The statute was not enacted to give such a person a litigation tactical advantage.  *See Hilliard v. Harbour*, 12 Cal. App. 5th 1006, 1015 (2017) (rejecting financial elder abuse claim where alleged misconduct arose from a commercial lending transaction and did not become wrongful merely because the plaintiff was over 65).

### e. Collateral estoppel does not assist Plaintiffs.

Plaintiffs assert that the collateral estoppel effect of the Honarkar Award "strongly supports" likelihood of success.  (Application at 18:19-27.)  Wrong. Collateral estoppel binds non-parties only in narrow circumstances not present here. *See Taylor*, 553 U.S. at 892–95.  Marcil was not a party to the arbitration.  He was not in privity with a party.  He had no opportunity to litigate.  Plaintiffs cannot offensively wield findings rendered in a proceeding to which Marcil was not a party. If Marcil were a party seeking to invoke offensive nonmutual collateral estoppel, that doctrine would require Nano to have had a full and fair opportunity to litigate

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

against him – which it did not. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979); *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 824 (2015).

### 3. Plaintiffs cannot show irreparable harm

"[T]o demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Williams v. Lobel Financial Corporation*, 673 F.Supp.3d 1101, 1108 (C.D. Cal. 2023). Here, Plaintiffs purported harms fail to meet this standard.

***Real property concerns do not establish irreparable harm where no foreclosure is imminent.*** Plaintiffs invoke the unique nature of real estate and the threat of foreclosure as sufficient irreparable harm. (Application at 19.) But Nano has not noticed a foreclosure sale. Nano has not commenced a judicial foreclosure action. Nano has filed UCC-1 financing statements – instruments that perfect, but do not enforce, security interests. The recording of a UCC-1 does not strip Plaintiffs of any property. It does not transfer title. It does not extinguish redemption rights. Plaintiffs' authorities on the uniqueness of real estate have no bearing.

***Plaintiffs' inability to obtain refinancing is speculative and inadequate.*** Plaintiffs claim the UCC-1 filings prevent refinancing. (Marcil Decl. ¶ 32.) They offer no declaration from any lender. They offer no rejected loan application. They offer no specific refinancing they have lost. Their supposed injury is entirely speculative, but it is black letter law that "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. *Caribbean Marine*, 844 F.2d at 674.

***Speculation about Nano's solvency is unsupported and irrelevant.*** Plaintiffs assert that Nano is "teetering on insolvency." (Application at 20.) But the only "evidence" is Marcil's "inform[ation] and belief." (Marcil Decl. ¶ 35.) Belief is not admissible evidence of a regulated commercial bank's financial condition. *Cf.* Fed.

DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

R. Evid. 602 (personal knowledge requirement).  And even if Nano faced regulatory action, that fact would not transform Plaintiffs' monetary claims into irreparable harm.  The FDIC's resolution authority over an insured depository institution is designed precisely to protect depositors and creditors.  12 U.S.C. § 1821.  Plaintiffs' speculation about future receivership is no substitute for evidence of present irreparable harm.  *See Caribbean Marine*, 844 F.2d at 674.

### 4.    The balance of equities tips in Nano's favor

Plaintiffs admit they are not making loan payments.  They propose to deposit some future payments into the Court registry – but only some.  They make no provision for the arrearage that began accruing May 1.  They propose to strip Nano of perfected security interests, control rights, and acceleration remedies that Marcil bargained for and signed.  They offer to substitute Court custody for Nano's contractual rights.

Nano, by contrast, faces concrete harm.  The May 1 notice of default reflected real concerns about borrower performance.  Plaintiffs' own admission that they will not pay confirms those concerns.  Stripping Nano of remedies during the pendency of a multi-year litigation forces Nano to bear all the risk of Plaintiffs' chosen non-performance while Plaintiffs accumulate further arrearages, deplete cash flow from collateral properties, and otherwise impair Nano's position.  The proposed registry deposits do not preserve Nano's bargained-for position because they ignore arrears, do not address potential acceleration, and lock up Nano's right to liquidity for the duration of the litigation.

Equities favoring a self-defaulting borrower over a regulated lender are not equities at all.

### 5.    The public interest disfavors the requested relief

Public interest favors the predictable enforcement of commercial loan documents.  The integrity of the commercial lending system depends on lenders'

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

21

ability to enforce written agreements.  Borrowers who allege fraud must prove it through ordinary processes, not by emergency motion designed to enjoin enforcement at the outset.

The public interest does not support a rule under which a sophisticated investor can stop paying his loans, allege a sprawling fraud, file a 92-page complaint loaded with bare incorporation by reference to an arbitration award against a third party, and obtain an emergency order shutting down the lender.  Such a rule would invite abuse and destabilize commercial lending.

### D.  <u>Federal Rule of Civil Procedure 67 Does not authorize the relief Plaintiffs seek</u>

Plaintiffs invoke Federal Rule of Civil Procedure 67 as if it authorized substantive interim relief.  It does not.  Rule 67 is a procedural mechanism that permits a party to deposit funds or property that the disposition of which is the subject of the action.  Fed. R. Civ. P. 67(a).  Put differently, "[t]he core purpose of Rule 67 is to relieve a party who holds a contested fund from responsibility for disbursement of that fund among those claiming some entitlement thereto." *Alstrom Caribe, Inc. v. George P. Reintjes Co., Inc*., 484 F.3d 106, 113 (1st Cir. 2007).  It does not authorize the Court to order a creditor to accept registry deposit in lieu of payment, to extinguish security interests, or to enjoin enforcement of a contract. *See generally Brady v. Basic Research, LLC*, 312 FRD 304, 306 (E.D.N.Y. 2016) (Rule 67 "'is intended to relieve a depositor of the burden of administering an asset. Often, the depositor's only interest in a case is possession of an asset; after depositing it with the Court the depositor is excused from the case.'").  Nano is the named contractually identified payee.  There is no genuine dispute about to whom payments are owed under the loan documents. There is only Plaintiffs' wish to escape payment until they obtain a judgment they cannot now obtain.

22

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

## E.     Federal Rule of Civil Procedure 65 requires a bond

Federal Rule of Civil Procedure 65(c) requires the movant to give security in an amount the Court deems "proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Plaintiffs propose no bond. They identify no amount. They offer no analysis of Nano's exposure. The proposed registry deposit is not a bond because it secures Plaintiffs' own payment obligation, not Nano's downside if the injunction is wrongful.

If the Court were inclined to consider relief on a noticed basis (and it should not consider relief on an ex parte basis at all), it would need to require a bond in an amount that protects Nano against (i) accrued arrearages, (ii) lost acceleration rights, (iii) impaired collateral value, (iv) lost ability to refinance or syndicate the loans, and (v) lost time-value of money. Plaintiffs have not begun to address those exposures.

## V.     CONCLUSION

The application is procedurally defective under *Mission Power* and Local Rule 7-19. It rests substantively on an arbitration award rendered in proceedings to which Plaintiffs were strangers and whose factual findings the Court cannot judicially notice for the truth of the matter asserted. Stripped of the inadmissible findings, Plaintiffs' showing reduces to a single self-serving, conclusory declaration that fails the *Winter* standard, fails the heightened standard for mandatory injunctions, and fails to address the bond requirement. Plaintiffs created any urgency themselves by unilaterally stopping payments. They cannot now demand emergency relief to escape the consequences of their elected default. Nano respectfully requests that the Court deny the application in its entirety.

Dated:  May 19, 2026                    **BRYAN CAVE LEIGHTON PAISNER LLP**

By:  */s. David J. Root*
_____

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

23

DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION



David J. Root
Attorneys for Defendant NANO BANC

DEFENDANT NANO BANC'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

### Certificate of Compliance

The undersigned, counsel of record for Defendants certifies that this brief contains 6812 words, which complies with the word limit of L.R. 11-6.1.

Dated:  May 19, 2026

**BRYAN CAVE LEIGHTON PAISNER LLP**

By:  */s/ David J. Root*
        David J. Root
Attorneys for Defendant NANO BANC

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA  92614-7276

25